IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DAVID A. OLSON, | CV 23-38-M-DLC-KLD |
| Plaintiff, | |
| vs. | FINDINGS & RECOMMENDATION |
| MISSOULA FIELD OFFICE, WESTERN MONTANA DISTRICT, MONTANA/DAKOTAS, BUREAU OF LAND MANAGEMENT, UNITED STATES DEPARTMENT OF THE INTERIOR; NORTHERN REGION, UNITED STATES DEPARTMENT OF AGRICULTURE, UNITED STATES FOREST SERVICE; KRISTEN BAKER-DICKINSON, CLEARWATER UNIT, SOUTHWESTERN LAND OFFICE, DEPARTMENT OF NATURAL RESOURCES AND CONSERVATION, STATE OF MONTANA, | and

ORDER |
| Defendants. | |

Plaintiff David A. Olson, who is proceeding pro se, brings this action against

the above-named Defendants under 42 U.S.C. § 1983 and *Bivens v. Six Unknown*

*Federal Narcotics Agents*, 403 U.S. 388 (1971), alleging constitutional, statutory,

and regulatory violations arising out of the demolition of a bridge located on Bureau of Land Management used by Olson to access his private property. (Doc. 1). The parties have filed several motions, which are fully briefed and ripe for ruling: (1) Defendant Kristen Baker-Dickinson's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 10); (2) Olson's Motion for Leave to Amend the List of Defendants on the Initial Complaint (Doc. 13); (3) Olson's Motion for Appointment of Counsel (Doc. 16); (4) Defendants Bureau of Land Management and United States Forest Service's (collectively "Federal Defendants") Rule 12(b)(6) Motion to Dismiss (Doc. 19); (5) Federal Defendants' Motion to Strike Plaintiff's Sur-Reply (Doc. 24); and (6) Olson's Motion for Leave to Submit a Supplemental Response to Defendant USA's Motion to Dismiss (Doc. 26).[1]

## I.  <u>Background</u>[2]

---

[1]  Olson has also filed a Notice to the Court Regarding Allegations of Misconduct Against Defense Counsel for the United States of America. (Doc. 28). The Court has reviewed the record and sees no evidence whatsoever of professional misconduct by counsel for the United States. Olson's request for a finding by the Court as to the "validity" of his misconduct allegations is denied.

[2]  Consistent with the standards applicable to Rule 12(b)(6) motions, the following facts are taken from the Complaint, matters of public record, and other evidence upon which the Complaint necessarily relies, the authenticity of which is not disputed. See *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

On November 29, 2021, BLM issued a Decision Record (Decision) and

Categorical Exclusion authorizing the removal of a bridge ("Skimmerhorn

Bridge") located on Bureau of Land Management ("BLM") land adjacent to

Olson's private property. (Docs. 1, 20-1, 20-2). On November 30, 2021, the BLM

provided public notification of the Decision on the BLM National NEPA Register.

*See* DOI-BLM-MT-B010-2022-0003-CX, https://eplanning.blm.gov/eplanning-

ui/project/2016681/510 (last accessed Oct. 13, 2023).

The Categorical Exclusion describes the Skimmerhorn Bridge as "a bridge

structure built from felled trees that has been created and maintained by adjacent

private landowners without [BLM] permission for several years; the bridge is

located on a road prism that has no legal permissions or right of ways at the time of

this writing." (Doc. 20-1 at 2). The Categorical Exclusion further explains:

> In its existing condition, the bridge stringers (felled trees) are failing,
> resulting in the bridge caving into a tributary to Elk Creek that it crosses
> over. The route over the bridge is attached to an existing road prism on BLM
> lands that is not part of the BLM transportation system. Alternative access to
> adjacent private inholdings is available through other routes.

(Doc. 20-1 at 2). The Decision approving the Skimmerhorn Bridge Removal

Project authorized the removal of "6 to 8 feet of bridge stringers (native tree

materials) and disposal of materials on site." (Doc. 20-2). The Decision stated that

"[r]emoval activities, including scarification and seeding of disturbed areas, would

occur immediately after implementation" in the spring of 2022. (Doc. 20-2).

BLM removed the Skimmerhorn Bridge on May 16, 2022. (Doc. 1 at 4; Doc. 20-3 at 2). Approximately one week later, on May 24, 2022, Olson appealed the Decision to the BLM, which dismissed the appeal as untimely.[3] (Doc. 20-3 at 2). Olson then appealed that decision to the Interior Board of Land Appeals (IBLA). (Doc. 20-3). On February 22, 2023, IBLA issued a decision dismissing Olson's appeal as moot, reasoning that because bridge removal and other activities authorized by the Decision had been completed, there was no effective relief that it could give to Olson. (Doc. 20-3 at 4).

On April 24, 2023, Olson filed this action using the Court's Complaint for Violation of Civil Rights (Non-Prisoner Complaint) form. (Doc. 1). Olson check-marked boxes indicating that he intends on bringing official capacity claims against Federal Defendants under *Bivens*, and official capacity claims against Baker-Dickinson under 42 U.S.C. § 1983. (Doc. 1 at 2-3). Olson alleges that the information in the Categorical Exclusion used to justify demolition of the

---

[3] BLM later conceded that the 30-day period for appealing the Decision began to run not from the date the Decision was published on the National NEPA Registry, but from the date Olson received actual notice of the Decision. (Doc. 22 at 2 n. 1; Doc. 21-5 at 2). Because Olson asserted that he first received actual notice of the Decision on the day Skimmerhorn Bridge was removed and filed his appeal less than two weeks later, Federal Defendants concede that Olson's appeal was timely and have withdrawn their argument to the contrary. (Doc. 22 at 2 n. 1).

Skimmerhorn Bridge was false. (Doc. 1 at 4). Olson states that he and other private landowners in the area have used the road traversed by the bridge ("Skimmerhorn Road") to access their properties since at least the early 1950s. (Doc. 1 at 4).

He asserts that by removing the bridge, BLM has denied him "the right to access and use le[]gal easements of record for the purpose of ingress and egress to private lands, and the right of pursuit of happiness." (Doc. 1 at 4). Olson claims that BLM demolished Skimmerhorn Bridge without providing notice to, or receiving any input from, affected private landowners. (Doc. 1 at 6). Olson further alleges that after the demolition, BLM left creosote timbers and other materials on the bank of Skimmerhorn Creek, in violation of "Montana State law, and federal regulation[s] associated with stream protection." (Doc. 1 at 4). Olson claims BLM's conduct in removing the Skimmerhorn Bridge and leaving creosote timbers on the creek embankment violated his "right to access legal easements of record for the purpose of ingress and egress to private lands, Montana Constitutional right of safety, Montana State laws and federal regulations pertaining to stream protection, and the unalienable right to pursuit of happiness as established by the Forefathers of the United States of America and the Second Continental Congress." (Doc. 1 at 4).

Olson alleges that Baker-Dickinson assisted BLM in preparing to demolish

5

Skimmerhorn Bridge, rendering her and the Department of Natural Resources ("DNRC") "complicit in the violations of rights stated above." (Doc. 1 at 4). Olson also asserts that by denying him the right to use or maintain Skimmerhorn Road, DNRC has violated his "right to access legal easements of record for the purpose of ingress and egress to private lands, the Montana Constitutional right of safety as the lack of maintenance of Skimmerhorn Rd by private landowners would render the road unsafe for passage by standard conveyance over time, and the unalienable right to pursuit of happiness as established by the Forefathers of the United States and the Second Continental Congress." (Doc. 1 at 4).

Finally, as to the United States Forest Service ("USFS"), Olson alleges that although the agency has not directly violated his rights, he has listed it as the manager of the land he has historically used to access private property in the area. (Doc. 1 at 4).

Olson asks the Court to declare that (1) Skimmerhorn Road is not a public road and that the general public does not have the right to access his private land without his consent; (2) he and other private landowners adjacent to Skimmerhorn Road have the right to use the road and the former Skimmerhorn Bridge to access private property; (3) he has the legal right to use Skimmerhorn Road to access his private property; and (4) leaving toxic and/or hazardous material and other

6

unnatural material along a creek embankment violates Montana law and federal regulations. Olson requests $20,000 in replacement costs for Skimmerhorn Bridge, $40,000 in emotional distress damages, $13,682 in litigation and research costs, and punitive damages. (Doc. 1 at 7).

## II.    Legal Standard: Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is proper under Rule 12(b)(6) when the complaint "either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013). A plaintiff must state a claim for relief that is "plausible on its face" to survive a motion to dismiss. *Zixiang Li*, 710 F.3d at 999 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At the motion to dismiss stage, the court "take[s] all well-pleaded factual allegations in the complaint as true, construing them in the light most favorable to the nonmoving party." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018) (citation omitted).

The Court's standard of review under Rule 12(b)(6) is informed by the provision of Fed. R. Civ. P. 8(a)(2) which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

*Iqbal*, 556 U.S. at 678-79 (quoting Rule 8). Although Rule 8(a)(2) does not require "detailed factual allegations," a plaintiff must set forth more than bare allegations that the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 677-78.

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678-79 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint will survive a motion to dismiss if it alleges facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. But if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory," then dismissal under Rule 12(b)(6) is appropriate. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

As a general rule, the court may not consider any materials outside the pleadings on a Rule 12(b)(6) motion. *Lee v. City Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). The court may, however, consider documents attached to the complaint, matters that are subject to judicial notice, and documents necessarily relied on by the complaint and whose authenticity no party questions. See *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *Lee*, 250 F.3d at 688-89 (9th Cir. 2001). See also *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir.

2018) (documents upon which the complaint necessarily relies may be considered on a Rule 12(b)(6) motion).

Where, as here, the plaintiff is proceeding pro se, the court has an obligation "to construe the pleadings liberally and to afford the [plaintiff] the benefit of any doubt." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). But even where the plaintiff is proceeding pro se, the complaint should be dismissed if it appears "beyond a doubt that the plaintiff can prove no set of facts in support of his claim." *See Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1997). A pro se plaintiff must be given leave to amend unless it is "absolutely clear that the deficiencies of the complaint cannot be cured by amendment." *Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007).

## III.  Discussion

### A.  Baker-Dickinson's Motion to Dismiss

Olson brings suit against Baker-Dickinson in her official capacity pursuant to 42 U.S.C. § 1983, which "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990). To state a claim under § 1983, a plaintiff "must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the

9

alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Baker-Dickinson argues Olson fails to state a claim for relief because, as a state employee sued in her official capacity, she is not a "person" for purposes of § 1983. A suit against a state employee in her official capacity is the functional equivalent of a suit against the governmental entity itself. *See Kentucky v. Graham*, 473 U.S. 159 (1985). It is well-settled that state officials sued in their official capacity for damages are not persons subject to liability under § 1983, and such claims are barred by Eleventh Amendment state sovereign immunity. *See Will v. Michigan Dept's of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983"). Because Olson names Baker-Dickinson in her official capacity only, his §1983 claim for money damages against her fails as a matter of law.

The United States Supreme Court has recognized a limited exception to sovereign immunity that allows a plaintiff to sue state officials acting in an official capacity for prospective declaratory or injunctive relief for continuing violations of federal law. *Ex Parte Young*, 209 U.S. 123, 155-56 (1908). Unlike official capacity claims for money damages, official capacity claims for prospective relief are not treated as actions against the state, and so are not barred by sovereign immunity.

10

*Will*, 491 U.S. at 71 n. 10. This exception does not apply to claims for retroactive relief, however, and "does not permit judgments against state officers declaring that they violated federal law in the past." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

To the extent Olson's complaint can be liberally construed as asserting official capacity claims for declaratory relief against Baker-Dickinson, the relief sought is retrospective. Although he phrases it differently, Olson essentially asks the Court to declare that the defendants, including Baker-Dickinson, wrongfully removed the Skimmerhorn Bridge, thereby depriving him of his legal right to use Skimmerhorn Road to access his property, and wrongfully left hazardous materials on the creek embankment. (Doc. 1 at 7). Because it would declare past conduct unlawful, any declaratory relief sought is retrospective and thus barred by state sovereign immunity under the Eleventh Amendment. For these reasons, Olson fails to state a cognizable § 1983 claim against Baker-Dickinson in her official capacity.

Even if the Court were to liberally construe Olson's complaint as asserting individual capacity claims, he fails to state a claim for relief under § 1983 because he does not allege a cognizable constitutional violation. To state a claim for relief under § 1983, Olson must allege two elements, the first of which is "that a right secured by the Constitution or laws of the United States was violated." *West*, 487

11

U.S. at 48. Olson claims that DNRC, presumably through Baker-Dickinson, violated his "unalienable right to pursuit of happiness as established by the Forefathers of the United States and the Second Continental Congress" in the Declaration of Independence. (Doc. 1 at 4). In his response brief, Olson again cites to his "right to pursuit of happiness" identified in the Declaration of Independence, and also refers to the preamble of the United States Constitution, which says that the federal government intends to "promote the general Welfare" of its citizens. (Doc. 12 at 4).

The Declaration of Independence and the preamble of the United States Constitution do not provide a not provide a basis for actionable claims under § 1983. *See e.g. Elias v. Chisolm*, 2020 WL 10051520, at *8 n. 2 (C.D. Cal. Sept. 6, 2020) ("The Declaration of Independence is not a federal law, is not part of the Constitution, and does not give rise to a federal civil rights action."); *Parks v. Christian*, 2019 WL 4058578, at *4 (C.D. Cal. Aug. 28, 2019) (recognizing that the Declaration of Independence does not create rights that are cognizable under § 1983); *Gallogly v. Attorney General of United States*, 2018 WL 11452319, at *5 (W.D. Texas Nov. 19, 2018) ("Domestic tranquility and general welfare are not federally protected rights, and the Constitution's preamble does not create rights upon which the plaintiff can sue."); *Maybrick v. Social Sec. Admin.*, 2013 WL

6571819, at *2 (D. Utah Dec. 13, 2013) (concluding that "the preamble to the United States Constitution does not create actionable rights under § 1983" and citing cases). Because Olson does not cite any specific, actionable Constitutional provisions, he fails to state a claim for relief under § 1983.

Olson also fails to allege facts showing that Baker-Dickinson personally participated in any alleged constitutional deprivation. "In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). A person deprives another "of a constitutional right, within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County School Board of Trustees*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.3d 740, 743 (9th Cir. 1978)). "The requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Johnson*, 588 F.2d at 743-44) (citation omitted).

Baker-Dickinson argues that Olson's Complaint does not allege any specific facts from which the Court may plausibly infer that she was personally involved in any alleged constitutional deprivation, or any facts establishing the requisite causal connection for individual capacity liability. Olson primarily alleges that Baker-Dickinson "did assist [BLM] in preparations to demolish the Skimmerhorn Bridge rendering them complicit in the violations of rights stated above." (Doc. 1, at 4). In the "Statement of Claim" section of the Complaint asking for a description of each defendant's personal involvement, including dates and locations of all relevant events, Olson asserts: "Kristen Baker-Dickinson – Landowner meetings, DNRC letters, and emails from Kirsten Baker-Dickinson asserting the above stated positions [] on behalf of the DNRC." (Doc. 1 at 5).

The Complaint itself contains no further mention of Baker-Dickinson. In response to the motion to dismiss, however, Olson asserts that on May 10, 2022[4] Baker-Dickinson provided "material support to the BLM for the demolition of the Skimmerhorn Bridge in the form of pictures indicating that the ground was in suitable condition to operate heavy equipment at the bridge site." (Doc. 12 at 6).

---

[4] Olson asserts that Baker-Dickinson sent these photographs on May 10, 2023. (Doc. 12 at 6). Because BLM removed the Skimmerhorn Bridge on May 16, 2022, the Court presumes Olson meant to allege the photographs were sent on May 10, 2022.

He claims that "[i]f not for material support provided by the DNRC," presumably through Baker-Dickinson, the BLM would not have initiated its plans to remove the Skimmerhorn Bridge in the days that followed. (Doc. 12 at 6).

Even considering the statements in Olson's response brief as part of the Complaint – which they are not – Olson does not allege specific facts from which the Court may plausibly infer that Baker-Dickinson was personally involved in any alleged constitutional deprivation, or that she set in motion a series of events she knew or reasonably should have known would cause others to violate Olson's constitutional rights. Olson does not allege facts showing that Baker-Dickinson made or contributed to the BLM's decision to demolish the Skimmerhorn Bridge, had the authority to make such a decision, was physically present when the bridge was demolished, or was in any way responsible for the creosote timbers and other materials allegedly left on the bank of Skimmerhorn Creek. And even assuming, as Olson claims in his response brief, that Baker-Dickinson provided BLM with photographs of the site, it is not reasonable to infer that had she not done so, BLM would not have initiated plans to remove the bridge as authorized in its November 2021 Decision. To the extent Olson alleges that DNRC, presumably through Baker-Dickinson, violated his alleged easement rights by denying him the use Skimmerhorn Road to access his property (Doc. 1 at 4), he does not assert facts

demonstrating that Baker-Dickinson has the authority to determine the existence of an easement on BLM land, or that she personally took any action to deny Olson access to his alleged easement.

Liberally construing the Complaint as alleging that Baker-Dickinson was part of a conspiracy to violate his rights, Olson also fails to state a claim for relief. "Conspiracy is not itself a constitutional tort under § 1983," but rather a means of enlarging the pool of responsible defendants by demonstrating their causal connection to an underlying constitutional violation. *Lacy v. Maricopa County*, 693 F.3d 896, 935 (9th Cir. 2012). To state a claim for conspiracy under § 1983, a plaintiff must allege facts showing an "agreement or 'meeting of the minds' to violate constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (citing *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989)). Conclusory allegations of a conspiracy that are not supported by material facts are insufficient to state a claim under § 1983. *See Woodrum v. Woodword County, Okl.*, 866 F.2d 1121, 1126 (9th Cir. 1989).

Olson's conclusory allegation that Baker-Dickinson was "complicit" in BLM's violation of his rights is not sufficient to support a § 1983 conspiracy claim. Likewise, Olson's allegation that Baker-Dickinson provided BLM with photographs of the Skimmerhorn Bridge site before demolition took place is also

16

insufficient to state a conspiracy claim. Olson does not allege a meeting of the minds and, as discussed above, also fails to allege a cognizable constitutional violation.

In his response brief, Olson cites to regulations promoted under the Federal Water Pollution Control Act as a basis for holding BLM liable under § 1983 for allegedly leaving creosote timbers and other hazardous materials at the Skimmer Bridge site. (Doc. 12 at 5). Even assuming the regulations Olson refers to provide for a private right of action, Olson does not allege facts demonstrating that Baker-Dickinson was personally involved with leaving materials at the site or had any responsibility to remove them. Because Olson does not identify any other federal statutory or regulatory provisions that could provide a basis for a claim under § 1983, he fails to state a claim for relief.

To the extent Olson alleges that Baker-Dickinson violated his rights under the state law, he likewise fails to state a claim for relief. Olson claims that Defendants, presumably including Baker-Dickinson, violated his "right of safety" under the Montana Constitution and unspecified Montana laws pertaining to stream protection. (Doc. 1 at 4). Because violations of state law are not actionable under § 1983, these claims also fail as a matter of law. *See e.g. Ybarra v. Bastian*, 647 F.2d 891, 892 (9th Cir. 1981) ("Only federal rights, privileges, or immunities

17

are protected by [§ 1983]. Violations of state law alone are insufficient."). For all of the above reasons, Olson fails to state a claim against Baker-Dickinson under § 1983.

On the same day he filed his response brief, Olson also filed a motion for leave to amend his Complaint to identify DNRC as a defendant instead of Baker-Dickinson. (Doc. 13). Olson argues the factual allegations in the Complaint "clearly show the DNRC is complicit in the violation of rights and federal regulations," and requests leave to amend his Complaint under Federal Rule of Civil Procedure 15(a). (Doc. 13 at 2).

Although Rule 15(a) states that leave to amend should be freely given when justice so requires, a court need not grant leave to amend if the proposed amendment would be futile. *U.S. ex rel. Lee v. SmithKline Beechum, Inc.*, 245 F.3d 1048, 1053 (9th Cir. 2001); *Lopez v. Smith* , 203 F.3d 1122, at 1126, 1131 (9th Cir. 2000). DNRC is an executive branch agency of the State of Montana. *See* Mon. Code Ann. §§ 2-15-104(1), 2-15-3301. As a state agency, DNRC is not a "person" subject to suit under § 1983. *See Will*, 491 U.S. at 70-71 ; *Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 365 (1990). Because DNRC is immune from suit under § 1983, Olson's proposed amendment would be futile and his motion for leave to amend (Doc. 13) is properly denied.

**B.     Federal Defendants' Motion to Dismiss**

Olson brings suit against Federal Defendants pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). (Doc. 1 at 3). *Bivens* is the federal counterpart to § 1983, and provides an implied private right of action for damages against federal officers alleged to have violated a person's constitutional rights. *See Correctional Services Corporation v. Malesko*, 534 U.S. 61, 66 (2001). Federal Defendants argue Olson fails to state a claim for relief under *Bivens* because (1) a *Bivens* action cannot be maintained against a government agency, and even if it could, (2) the claims do not fall within the categories of claims previously recognized under *Bivens* and there is no basis for recognizing a new implied cause of action.

The United States Supreme Court has held that *Bivens* claims cannot be maintained against federal agencies. *See FDIC v. Meyer,* 510 U.S. 471, 486 (1994) (no *Bivens* claim against a federal agency); *Matthew v. Yellowstone County*, 2017 WL 1273992, at *2 (D. Mont. Apr. 5, 2017) (citing *Meyer*, 510 U.S. at 485) ("It is precisely because government agencies are immune from suit that *Bivens* actions, which impose liability on officers, even exist."). Because both Federal Defendants – BLM and USFS – are federal agencies, they are not subject to liability under *Bivens*. Accordingly, to the extent Olson claims that Federal Defendants violated

19

his rights under the United States Constitution, he fails to state a claim for relief under *Bivens*.

In sur-reply, Olson identifies three BLM officials who he asserts have violated his constitutional rights based on the facts alleged in the Complaint.[5] (Doc. 23). Even Olson were granted leave to amend his Complaint to add these BLM officials as defendants, he fails to state a claim for relief because his claims do not fall within the categories of claims previously recognized under *Bivens* and there is no basis for recognizing a new implied cause of action in this case. The United States Supreme Court has previously recognized a *Bivens* action in only three contexts: (1) unreasonable search and seizure by federal officers in violation of the Fourth Amendment, see *Bivens*, 403 U.S. at 396-97; (2) gender discrimination by a member of Congress in violation of the Fifth Amendment, see *Davis v. Passman*, 442 U.S. 228, 248-49 (1979), and (3) deliberate indifference to

---

[5] Federal Defendants have moved to strike Olson's sur-reply on the ground that he filed the brief without seeking leave of Court as required under Local Rule 7.1(d)(1)(D). (Doc. 25). Olson acknowledges that he did not seek leave of Court prior to filing, and has responded with a motion for leave to file his proposed sur-reply. (Docs. 26). In light of Olson's pro se status, the Court will grant Olson's motion and treat his sur-reply (Doc. 23) as if it is properly part of the record. But even considering the arguments Olson makes in sur-reply, he fails to state a claim for relief against Federal Defendants for the reasons set forth herein.

a prisoner's medical needs by federal officers in violation of the Eighth

Amendment, see *Carlson v. Green*, 446 U.S. 14, 19 (1980).

Here, Olson's claims that Federal Defendants violated his constitutional

rights by engaging in administrative agency action to remove the Skimmerhorn

Bridge and deny him access to his private property clearly arise in a new context.

This case thus differs from previous cases in which the Supreme Court has

recognized a *Bivens* cause of action.

Where, as here, a plaintiff's claims arise in a new context, the court may

extend *Bivens* only if (1) the plaintiff has no other adequate remedy, and (2) there

are no "special factors" that counsel hesitation in extending *Bivens*. *Ioane v.

Hodges*, 939 F.3d 945, 951 (9th Cir. 2019). The Supreme Court "has made clear

that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar v.

Abbasi*, 137 S.Ct. 1843, 1857 (2017).

Here, there are alternative, existing remedies available to Olson to protect

the interests implicated by the Complaint. As Federal Defendants point out, BLM's

NEPA process provides aggrieved parties with an avenue to protect their interests

at the administrative stage, and Olson availed himself of that process by appealing

BLM's Decision to the IBLA. Additionally, the Administrative Procedure Act

("APA") provides a mechanism by which an individual may challenge final agency

action in federal court. 5 U.S.C. § 702. *See also*, *Gallo Cattle Co. v. U.S. Dept. of Agriculture*, 159 F.3d 1194, 1198 (9th Cir, 1998). Had Olson wanted to challenge the legality of the BLM's final agency action, he presumably could have brought suit for judicial review under the APA. Because there are alternative, existing process for protecting the interests implicated in Olson's Complaint, there is no basis for extending a *Bivens* remedy in this context.

To the extent Olson alleges that Federal Defendants violated his rights under the Montana Constitution, he also fails to state a claim for relief. As explained above, Olson claims that Defendants, presumably including Federal Defendants, violated his "right of safety" under the Montana Constitution. (Doc. 1 at 4). As Federal Defendants rightly point out, however, the United States has not waived its sovereign immunity against state constitutional claims. *See e.g.*, *Paulson v. City of San Diego*, 475 F.3d 1047, 1048 (9th Cir. 2007); *Azure v. United States*, 2022 WL 2158335, at *2 (D. Mont. June 15, 2022). Accordingly, any state constitutional claims Olson means to assert against Federal Defendants fail as a matter of law.

Finally, Federal Defendants argue that Olson's conclusory allegations of unspecified statutory and regulatory violations fail to state a claim for relief. Olson alleges in his Complaint that BLM "violated Montana State law, and federal regulation[s] associated with stream protection" by leaving creosote timbers on the

bank of Skimmerhorn Creek, but does not identify what specific statutes or regulations he believes were violated. (Doc. 1 at 4).

In response to Federal Defendants' motion to dismiss, Olson explains that BLM returned to the Skimmerhorn Bridge site in June and July 2023 and removed all creosote timbers and other unnatural materials from the site. (Doc. 21 at 6). Olson explains that because BLM has thus complied "with federal regulations pertaining to stream protection by cleaning up the toxic and hazardous mess [it] left in the streambed and along the embankment of Skimmerhorn Creek following the demolition of Skimmerhorn Bridge," his claims are moot to the extent they are based on alleged regulatory violations and he is willing to withdraw "the 'federal regulations' portion of the case." (Doc. 21 at 6; Doc. 23 at 3). Even if he had not withdrawn these claims, because the Complaint does not identify any specific federal regulations that Federal Defendants allegedly violated, Olson fails to state a claim for relief. To the extent Olson asserts in briefing that BLM committed additional federal regulatory violations while cleaning up the site in the summer of 2023, such allegations go beyond the scope of the Complaint and are not part of this lawsuit. (Doc. 21 at 6; Doc. 23 at 3).

For the first time in his sur-reply, Olson cites various sections of the Federal Water Pollution Control Act, commonly known as the Clean Water Act ("CWA"),

33 U.S.C. § 1251, and describes some of the general obligations imposed under those statutory provisions. (Doc. 23 at 4-5). Olson also footnote cites four Montana water quality and stream protection statutes. (Doc. 23 at 5 n. 14). Olson does not explain how Federal Defendants allegedly violated these statutes, however, and more importantly, the Complaint does not identify these or any other specific statutory provisions as a basis for Olson's claims. Accordingly, Olson fails to state a claim under the CWA or any other state or federal statute.

Having determined that Olson fails to state any viable claims for relief, the Court turns to Federal Defendants' request that the Complaint be dismissed with prejudice. Dismissal for failure to state a claim under Rule 12(b)(6) "should ordinarily be without prejudice." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003). This is partly because a Rule 12(b)(6) dismissal with prejudice operates as an adjudication on the merits of the claims under Federal Rule of Civil Procedure 41(b) and bars further litigation. *Wagh v. Metris Direct, Inc.*, 348 F.3d 1102, 1113 (9th Cir. 2003), overruled on other grounds by *Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007). But dismissal with prejudice is appropriate if "it is clear ... that the complaint could not be saved by amendment", *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003), or if "the court determine[s] that the allegation of other facts consistent with the

24

challenged pleading could not possibly cure the deficiency." *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962).

Because Federal Defendants are not subject to suit for federal constitutional violations under *Bivens* and have not waived their sovereign immunity as to any state constitutional claims, Olson's constitutional claims cannot be saved by amendment and are properly dismissed with prejudice. The remainder of Olson's claims against Federal Defendants should be dismissed without prejudice.

### D.   Motion for Appointment of Counsel

Olson has also filed a motion for appointment of counsel. (Doc. 16). He explains that he cannot an afford an attorney to represent him, and asks the Court to appoint counsel to assist him in this matter. (Doc. 16). Because the Court is recommending that Olson's Complaint be dismissed for failure to state a claim for relief, Olson's motion for appointment of counsel is moot. Even if the motion were not moot, appointment of counsel is not warranted.

"Generally, a person has no right to counsel in civil actions." *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). Although the Court has discretionary authority to appoint counsel to represent an indigent litigant under 28 U.S.C. § 1915(e)(1), *see Palmer*, 560 F.3d at 970, Olson has paid the filing fee for this action and he is not proceeding in forma pauperis under § 1915.

Even if Olson were proceeding under § 1915, he has not made a showing of "exception circumstances" as required to warrant appointment of counsel. *See Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). The exceptional circumstances inquiry "requires an evaluation of both the likelihood of success on the merits and the ability of the [litigant] to articulate [her] claims pro se in light of the complexity of the legal issues involved." *Terrell*, 935 F.2d at 1017. Olson has not shown the necessary combination of probable success on the merits and inability to articulate his claims pro se in light of the legal issues involved. To the contrary, Olson's briefs reflect that he is capable of articulating his claims and legal arguments. For these reasons, Olson is not entitled to court appointed counsel.

## IV.   <u>Conclusion</u>

For the reasons set forth above, **IT IS ORDERED** that:

(1) Olson's Motion for Appointment of Counsel (Doc. 16) is **DENIED**;

(2) Federal Defendants' Motion to Strike Plaintiff's Sur-Reply (Doc. 24) **DENIED**; and

(3) Olson's Motion for Leave to Submit a Supplemental Response to Defendant USA's Motion to Dismiss (Doc. 26) is **GRANTED**.

Additionally, **IT IS RECOMMENDED** that:

(1) Defendant Kristen Baker-Dickinson's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 10) be **GRANTED**;

(2) Olson's Motion for Leave to Amend the List of Defendants on the Initial Complaint (Doc. 13) be **DENIED** as set forth above; and

(3) Defendants Bureau of Land Management and United States Forest Service's Rule 12(b)(6) Motion to Dismiss (Doc. 19) be **GRANTED**;

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 24th day of October, 2023.

Kathleen L. Desoto
United States Magistrate Judge